UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,                    :
                                                :
            Plaintiff,                          :
                                                :
vs.                                             :   Case No. 2:20-cv-02013
                                                :
DC HOSPITALITY – LENEXA, LLC, a Kansas :
limited liability company,                      :
                                                :
            Defendant.                          :
_____/:

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, DC HOSPITALITY – LENEXA, LLC, a Kansas limited liability company,

(sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees,

litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181

et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant DC HOSPITALITY – LENEXA, LLC property, the Woodspring Suites

Hotel, is located at 14700 W. 112th Street, Lenexa, Kansas 66215, in Johnson County

("Woodspring Suites").

3.      Venue is proper in the District of Kansas, Kansas City Division because the situs

of the property lies in this judicial district.  The Defendant's property is located in and does

business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation, the Woodspring Suites, as defined by the ADA, 42 U.S.C. §12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Defendant is responsible for complying with the obligations of the ADA.

7.      The place of public accommodation that the Defendant DC HOSPITALITY – LENEXA, LLC owns, operates, leases or leases to is the Woodspring Suites.

8.      Woodspring Suites is a hotel or inn.

9.      Woodspring Suites is a place of lodging.

10.      Woodspring Suites is a place of public accommodation.

11.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

12.      Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

13.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Woodspring Suites which forms the basis of this lawsuit on September 27, 2018 (check in)

and September 28, 2018 (checkout), and again on September 12, 2019 (check in) and September 13, 2019 (check out), and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City area.

14.    He also visited the Kansas City area in March 2018, and February 2019, and May 2019 and he has plans to return to the Kansas City area in February or March 2020.

15.    The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Woodspring Suites.

16.    For the reasons set forth in paragraphs 12-15 and 27, Mr. Nekouee plans to return to the Woodspring Suites, but he is deterred from visiting it again until the barriers to access are removed.

17.    The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability to access the property due to excessively steep slopes of walking surfaces, impaired his use of rooms 215 and 315, and impaired his use of the restroom in the lobby restroom of Woodspring Suites and the restrooms in rooms 215 and 315, and have impaired his access to the goods and services at the Woodspring Suites.

18.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

19.    The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

20.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his

3

wheelchair.

21.     The slope of the walking surface outside of the Woodspring Suites and within 60 inches of its lobby entrance is steeper than 1:48 and steeper than 3.1%.

22.     On his visit to the Woodspring Suites, the Plaintiff encountered changes in level, excessively steep running slopes and cross slopes in its access ramps and walking surfaces (sidewalks).

23.     The Plaintiff encountered barriers to access in the restroom in the lobby and in the accessible guest restrooms 215 and 315.

24.     The Plaintiff is deterred from visiting the Woodspring Suites even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

25.     The Plaintiff is deterred from visiting the places of public accommodation in the Woodspring Suites, even though the hotel is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City area because of the difficulties he will experience there in the parking lot, access ramps, walking surfaces (sidewalks), guestrooms, restrooms, until the property is made accessible to him in a wheelchair.

26.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 32 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27.     Fred Nekouee desires to visit the Woodspring Suites not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance

with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

29.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30.     Preliminary inspections of the Woodspring Suites have shown that violations exist.

31.     Physical conditions that exist at the Woodspring Suites are accurately described in each romanette (i) of each lettered subparagraph in paragraph 32 of this Complaint.

32.     The violations that Fred Nekouee personally encountered or observed on his visit to the Woodspring Suites include, but are not limited to:

**PARKING AREA**

a.   (i) In the parking lot, the change in level of the sidewalk at the drain area across the sidewalk shown in the picture below is greater than 0.5 inches.   (ii) This change of level of this sidewalk along the accessible route to the entrance to the hotel is greater than the maximum allowed change in level of 0.5 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) The Plaintiff encountered this change of level of this sidewalk while moving in his wheelchair, and it stopped the forward movement of his wheelchair and made his wheelchair unstable.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much

difficulty or expense.



b.  (i) The cross slope of the walking surface on the route toward the hotel entrance is steeper than 1:48 and is steeper than 3.1%.  (ii) The cross slope of this walking surface shown in the photographs below is steeper than 1:48 and steeper than 6%, in violation of Federal Law 2010, ADAAG § 403.3.  (iii) The Plaintiff moved in his wheelchair on this walkway toward room the hotel entrance, and its cross slope made his wheelchair unstable. (iv) The action required to reduce the cross slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.





c.   (i) The cross slope of the walking surface with pavers in front of the main hotel entrance is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of the walking surface with pavers in front of the main hotel entrance is steeper than a maximum slope of 1:48 and is steeper than 3.5%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this section of the walking surface with pavers in front of the main entrance to the hotel, and the cross slope made his wheelchair unstable.   (iv) The action required to reduce the slope of this portion of the walking surface is easily accomplishable and able to be carried out without much difficulty

or expense.

   d.   (i) The running slope of the access ramp shown in the photograph below is steeper than 1:12 and steeper than 9%, and this access ramp does not have a top landing.   (ii) The running slope of this access ramp is steeper than 1:12 and is steeper than 9%, and this access ramp does not have a top landing, in violation of Federal Law 2010, ADAAG §§ 405.2 and 405.7.   (iii) While moving in his wheelchair, the Plaintiff encountered this access ramp, and due to its slope it made his wheelchair unstable, and his wheelchair slipped sideways when he turned his wheelchair due the lack of a top landing for this access ramp.   (iv) The actions required to reduce the running slope of this access ramp and to provide a top landing for it are easily accomplishable and able to be carried out without much difficulty or expense.



e.      (i) The transition from the access aisle to the curb ramp to the walking surface leading to the restaurant has a change of level greater than 0.5 inches.   (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level, and it stopped the forward movement of his wheelchair. (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

f.      (i) The slope of the ground surface within the hotel lobby entrance door maneuvering space within 60 inches of the door is steeper than 1:48 and steeper than 3.1%.

(ii) The slope of the ground surface within the required maneuvering space of 60 inches of the entrance door to the hotel lobby is steeper than 1:48 and is as steep as about 4%, in violation of Federal Law 2010, ADAAG § 404.2.4.4.   (iii) Due to the slope of the ground surface in front this entrance door, the Plaintiff's wheelchair slipped sideways as he tried to enter the hotel.   (iv) The action required to reduce the slope of this maneuvering space is easily accomplishable and able to be carried out without much difficulty or expense.



**ENTRANCE AND LOBBY**

   g.   (i) The force needed to open the exterior door to the lobby is greater than 5 pounds.

(ii) The force needed to open the exterior door to the lobby is about 14 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous

application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this exterior entrance door, the Plaintiff had difficulty trying to enter the hotel in his wheelchair, and he required assistance to open this door.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The time for the office exterior door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.     (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than the minimum required time of 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, it closed on his wheelchair before he could move through this doorway.   (iv) The action required to adjust the door closer on this door is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN THE LOBBY**

i.     (i) In the restroom in the lobby, the space between the bottom of the rear wall grab bar and the top of the toilet tank is less than 1.5 inches.   (ii) The space between the bottom of this rear wall grab bar and the top of the toilet tank is less than a minimum of 1.5 inches and is only about .75 inches, in violation of Federal Law 2010, ADAAG §§ 604 and 609.3.   (iii) Due to the lack of space between the bottom of this rear wall grab bar and the top of the toilet tank, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or

expense.

j.    (i) In the restroom in the lobby, the drain and water supply pipes under the sink are not insulated.   (ii) The drain and supply pipes under this sink are not insulated as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink and he risked skin burns and injury to his legs due to the lack of insulation on the drain and supply pipes to this sink.   (iv) The action required to insulate the drain and supply pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



k.    (i) In the restroom in the lobby, to operate the entrance door knob and lock requires tight grasping, pinching, or twisting or the wrist.   (ii) The operation of this door knob and lock to the entrance to the restroom in the lobby required tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7. (iii) The Plaintiff tried but could not operate this door knob or lock with a closed fist or loose grip.   (iv) The action required to replace this door hardware is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) In the restroom in the lobby, the dispenser tab for liquid soap is located higher than 48 inches above the floor.   (ii) This dispenser tab for liquid soap is located higher than 48 inches above the finish floor and is outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this soap dispenser tab from his wheelchair to obtain soap.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 315**

m.    (i) In accessible guestroom 315, the time for the office exterior door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.    (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than the minimum required time of 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, it closed on his wheelchair before he could move through this doorway.   (iv) The action required to adjust the door closer on this door is easily accomplishable and able to be carried out without much difficulty or expense.

n.    (i) In accessible guestroom 315, the entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is blocked by the refrigerator and is less than 18 inches.   (ii) The entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum allowed clearance of 18 inches and is only about 14 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this narrow pull side maneuvering clearance, the Plaintiff had difficulty maneuvering his wheelchair to exit the room and he

required assistance to exit the room.   (iv) The action required to relocate this refrigerator is easily accomplishable and able to be carried out without much difficulty or expense.

o.     (i) In accessible guestroom 315, the operation of the kitchen, cook top control knobs requires tight grasping, pinching or twisting of the wrist.   (ii) The operation of these control knobs requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried to turn these kitchen, cook top control knobs but could not operate them with a closed fist or loose grip.   (iv) The action required to replace these control knobs is easily accomplishable and able to be carried out without much difficulty or expense.

p.     (i) In accessible guestroom 315, the operation of the kitchen hood control knobs requires tight grasping, pinching or twisting of the wrist and these control knobs are located higher than 48 inches above the floor.   (ii) The operation of these control knobs requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 308.2.   (iii) The Plaintiff observed these control knobs and tried but could not reach these kitchen hood control knobs due to their height above the floor.   (iv) The action required to replace these control knobs these controls within the reach range of an individual in a wheelchair is easily accomplishable and able to be carried out without much difficulty or expense.

q.     (i) In accessible guestroom 315, the kitchen cabinets do not have handles and require tight grasping, pinching or twisting of the wrist to open them.   (ii) These kitchen cabinets do not have handles and require tight grasping, pinching, or twisting of the wrist to open them, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not open these cabinet drawers and doors with a closed fist or loose grip.   (iv)

The action required to install handles on these kitchen cabinets is easily accomplishable and able to be carried out without much difficulty or expense.

### RESTROOM IN ACCESSIBLE GUESTROOM 315

r. (i) In the restroom in accessible guestroom 315, a permanent seat at the head end of the bathtub or a removable in-tub seat is not provided. (ii) A permanent seat at the head end of this bathtub or a removable in-tub seat is not provided, in violation of Federal Law 2010, ADAAG § 607.3. (iii) Due to the lack of a seat in this bathtub, the Plaintiff required assistance to bathe. (iv) The action required to provide a seat for this bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

s. (i) In the restroom in accessible guestroom 315, the shower spray head is located higher than 48 inches above the floor of the bathtub. (ii) This shower spray head is locate higher than 48 inches above the floor of the bathtub, in violation of Federal Law 2010, ADAAG §§ 308.2 and 608.6. (iii) The Plaintiff tried but could not reach this shower spray head due to its height above the floor of the bathtub. (iv) The action required to put a written policy in place to ensure that the shower spray head is adjusted to a height at or below 48 inches above the floor of the bathtub when a prior guest leaves is easily accomplishable and able to be carried out without much difficulty or expense.

### HALLWAY

t. (i) The force needed to open the hallway door is greater than 5 pounds. (ii) The force needed to open the hallway door is about 12 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) The Plaintiff had difficulty opening this door due to the force necessary to open it. (iv)

The action required to adjust the door closer to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

u.     (i) The time for the hallway door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.     (ii) The time for this door to close from an open position of 90 degrees to 12 degrees from the latch is less than the minimum required time of 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404-2.8.1.   (iii) Due to the short time this door takes to almost fully close from an open position, the Plaintiff could not make it all of the way through this doorway before the door closed on his wheelchair.   (iv) The action required to adjust this door closer so that this door closes more slowly from an open position is easily accomplishable and able to be carried out without much difficulty or expense.

v.     (i) In the hallway, the dollar bill inlet to the soda vending machine is higher than 48 inches above the floor.  (ii) This dollar bill inlet is higher than 48 inches above the finish floor and is about as high as 63 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not use this dollar bill inlet to this soda vending machine because of its height above the floor.   (iv) The action required to replace or adjust this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

w.     (i) In the hallway, the credit card reader inlet to the snack vending machine is higher than 48 inches above the floor.   (ii) This credit card reader inlet is higher than 48 inches above the finish floor and is about as high as 67 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law

2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not use this credit card reader to this snack vending machine because of its height above the floor.   (iv) The action required to replace or adjust this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

**LAUNDRY**

x.   (i) The entrance to the laundry does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the laundry room does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of accessible signage and it is a barrier to access the laundry room since it is not indicated that the laundry room is accessible, and this lack of signage deters him from staying at Woodspring Suites.   (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) The force needed to open the door to the laundry is greater than 5 pounds.   (ii) The force needed to open the door to the laundry is about 10 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) The Plaintiff had difficulty opening this door due to the force necessary to open it. (iv) The action required to adjust the door closer to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In the laundry room, the laundry detergent dispenser has a leading edge that protrudes horizontally from the wall more than 4 inches and it is located between 27 and 80 inches above the floor.   (ii) This laundry detergent dispenser, located between 27 and

80 inches above the finish floor, has a leading edge that protrudes horizontally more than 4 inches from the wall and into the circulation path, in violation of Federal Law 2010, ADAAG § 307.2.   (iii) The Plaintiff encountered this laundry detergent dispenser in the circulation path to the washers and dryers, and he risked a head injury due to the protrusion of its leading edge more than 4 inches into the circulation path.   (iv) The action required to relocate or to replace this laundry detergent dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

33.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

34.    The discriminatory violations described in paragraph 32 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

35.    Plaintiff requires access to accessible guestroom 215 in which he stayed to verify if the barriers to access remain that he encountered in this room and its restroom.

36.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

37.    The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

38.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

39.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

40.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

41.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and

constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

42.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

43.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Woodspring Suites, adjacent parking lot, access ramps and walking surfaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

44.     Millions of Americans require the use of a wheelchair for mobility.

45.     The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

46.     At some point, every family embraces disability.

47.     Removing existing architectural barriers to access under Title III of the ADA will be good for business at the Woodspring Suites.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily

achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

   c.  An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

   d.  Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

  Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

     Respectfully submitted,

     <u>s/Robert J. Vincze</u>
     Robert J. Vincze (KS #14101)
     Law Offices of Robert J. Vincze
     PO Box 792, Andover, Kansas 67002
     Phone: 303-204-8207
     Email: <u>vinczelaw@att.net</u>

     *Attorney for Plaintiff Fred Nekouee*